**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DALE LEE, Derivatively on Behalf of HASBRO, INC., | |
| | Case No. 1:25-cv-01018 |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| CHRISTIAN COCKS, RICHARD S. STODDART, HOPE F. COCHRAN, LISA GERSH, ELIZABETH HAMREN, BLAKE JORGENSEN, LAUREL J. RICHIE, MARY BETH WEST, MICHAEL R. BURNS, TRACY A. LEINBACH, LINDA K. ZECHER HIGGINS, KENNETH A. BRONFIN, EDWARD M. PHILIP, GINA GOETTER, DEBORAH THOMAS, and ERIC NYMAN, | |
| Defendants, | |
| and | |
| HASBRO, INC., | |
| Nominal Defendant. | |

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

Dale Lee ("Plaintiff"), by and through his undersigned attorneys, brings this verified stockholder derivative action on behalf of nominal defendant Hasbro, Inc. ("Hasbro" or the "Company"), against certain of the Company's executive officers and its Board of Directors (the "Board") for breaches of fiduciary duties and violations of federal law by the Individual Defendants (defined below). Plaintiff's allegations are based on personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the

1

investigation conducted by his counsel, including review of publicly available information regarding the Company; the allegations of a class action complaint filed in the Securities Class Action captioned *West Palm Beach Firefighters' Pension Fund v. Hasbro, Inc., et al.,* Case No. 1:24-cv-08633 (S.D.N.Y. Nov. 13, 2024) (the "Securities Class Action"); conference call transcripts and announcements; filings with the United States Securities and Exchange Commission (the "SEC"); press releases disseminated by Hasbro; legal filings; news reports; and securities analysts' reports about the Company.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought in the right, and for the benefit, of Hasbro against the Individual Defendants, certain of Hasbro's officers and directors, seeking to remedy their violations of federal law and breaches of fiduciary duty that have occurred from at least February 7, 2022 to October 25, 2023 (the "Relevant Period"), and have caused, and continue to cause, substantial harm to Hasbro and its shareholders.

2.      Hasbro is a multinational toy and entertainment company that manufactures and distributes, *inter alia*, action figures, board games, and video games. The Company owns several well-known brands and franchises, including G.I. Joe, Transformers, Monopoly, Scrabble, Risk, Dungeons & Dragons, and Magic: The Gathering. Hasbro also produces television shows and movies based on its popular toy brands.

3.      At the start of the COVID-19 pandemic, demand for the Company's products, particularly its toys and board games, was temporarily heightened as a result of lockdowns and stay-at-home orders. Fearing supply chain disruptions related to the pandemic, Hasbro purchased and accumulated excess inventories in order to ensure that the Company maintained sufficient product to keep up with the heightened demand.

4.      Throughout the Relevant Period, Hasbro's inventory levels were of significant concern to investors and the public. While Company management consistently represented that they expected demand trends to continue and that the Company was well-positioned due to its high inventory levels, the heightened demand for the Company's products was a temporary and unsustainable result of the COVID-19-related lockdowns. Accordingly, contrary to repeated statements by the Individual Defendants, Hasbro's inventories were not of "good quality," and they far exceeded customer demand.

5.      The truth started to emerge on January 26, 2023, when the Company reported disappointing fourth quarter 2022 financial results and disclosed that Hasbro was planning "leadership and organizational changes, including the elimination of approximately 15% of its global workforce this year."

6.      On this news, the price of Hasbro stock declined by 8.1% in one day, from a close of $63.78 per share on January 26, 2023 to a close of $58.61 per share on January 27, 2023. The price of Hasbro stock remained artificially inflated, however, due to the continued issuance of materially false and misleading statements.

7.      The full truth emerged on October 26, 2023, when the Company reported disappointing third quarter 2023 financial results and lowered its full-year revenue guidance, partly attributable to "prioritization of inventory management across both owned and retail inventory. During the related earnings call, it was further disclosed that Hasbro was forecasting a "$50-ish million [] onetime cost" related to "mov[ing] through inventory at the retailer level, extra marketing to move through the inventory, [and] extra obsolescence cost."

8.      On this news, the price of Hasbro stock declined 11.7% per share, from a close of $54.75 per share on October 25, 2023, to a close of $48.37 per share on October 26, 2023.

9.      As a result of the foregoing, the Securities Class Action was filed against the Company and certain of its executive officers, exposing the Company to massive class-wide liability.

10.      In light of the breaches of fiduciary duty by the Individual Defendants, most of whom are the Company's current directors, the substantial likelihood of the directors' liability in this derivative action and the Securities Class Action, and that the Individual Defendants are beholden to each other based on their longstanding business and personal relationships, the Individual Defendants do not possess the requisite level of disinterestedness and independence to consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9) and Section 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

12.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

13.      In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

14.      This action is not a collusive action designed to confer jurisdiction on a court of the

United States that it would not otherwise have.

15.     This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this district pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. §1391 because Defendants have conducted business in this District and a substantial portion of the transaction and wrongs complained of herein occurred in this District.

## PARTIES

*Plaintiff*

17.     Plaintiff is, and has been at all relevant times, a shareholder of Hasbro.

*Nominal Defendant*

18.     Nominal Defendant Hasbro is incorporated under the laws of Rhode Island, with its principal executive offices located at 1027 Newport Avenue, Pawtucket, Rhode Island. Hasbro common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "HAS."

*Individual Defendants*

19.     Defendant Christian Cocks ("Cocks") has served as Hasbro's Chief Executive Officer ("CEO") since February 2022. Defendant Cocks is named as a defendant in the Securities Class Action. According to the Company's public filings, Defendant Cocks received $15,110,869 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Cocks beneficially

owned 304,007 shares of Hasbro stock, worth nearly $16 million.[1]

20.    Defendant Richard S. Stoddart ("Stoddart") has served as the Chairman of the Board since February 2022. Defendant Stoddart additionally served as the Company's Interim CEO from October 2021 until February 2022. Defendant Stoddart is named as a defendant in the Securities Class Action. As of March 11, 2024, Defendant Stoddart beneficially owned 51,999 shares of Hasbro stock, worth roughly $2.7 million.

21.    Defendant Hope F. Cochran ("Cochran") has served as a member of the Board since 2016 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Cochran received $338,494 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Cochran beneficially owned 15,568 shares of Hasbro stock, worth $818,409.

22.    Defendant Lisa Gersh ("Gersh") has served as a member of the Board since 2010. Defendant Gersh served as a member of the Audit Committee during the Relevant Period. According to the Company's public filings, Defendant Gersh received $334,885 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Gersh beneficially owned 71,176 shares of Hasbro stock, worth roughly $3.7 million.

23.    Defendant Elizabeth Hamren ("Hamren") has served as a member of the Board since 2022. According to the Company's public filings, Defendant Hamren received $297,544 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Hamren beneficially owned 5,102 shares of Hasbro stock, worth $268,212.

24.    Defendant Blake Jorgensen ("Jorgensen") has served as a member of the Board since 2022 and serves as Chair of the Audit Committee. According to the Company's public

---

[1] Valuations of the Individual Defendants' personal holdings of Company stock are based on the $52.57 per share closing price of Hasbro stock on March 11, 2024.

filings, Defendant Jorgensen received $314,944 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Jorgensen beneficially owned 5,102 shares of Hasbro stock, worth $268,212.

25.     Defendant Laurel J. Richie ("Richie") has served as a member of the Board since 2020. According to the Company's public filings, Defendant Richie received $297,544 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Richie beneficially owned 7,553 shares of Hasbro stock, worth $397,061.

26.     Defendant Mary Beth West ("West") has served as a member of the Board since 2016. According to the Company's public filings, Defendant West received $311,344 in 2023 in compensation from the Company. As of March 11, 2024, Defendant West beneficially owned 15,568 shares of Hasbro stock, worth roughly $818,410.

***Former Director Defendants***

27.     Defendant Michael R. Burns ("Burns") served as a member of the Board from 2014 until May 2024. According to the Company's public filings, Defendant Burns received $295,044 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Burns beneficially owned 21,211 shares of Hasbro stock, worth roughly $1.1 million.

28.     Defendant Tracy A. Leinbach ("Leinbach") served as a member of the Board from 2008 until May 2024. According to the Company's public filings, Defendant Leinbach received $320,044 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Leinbach beneficially owned 39,860 shares of Hasbro stock, worth roughly $2.1 million.

29.     Defendant Linda K. Zecher Higgins ("Higgins") served as a member of the Board from 2014 until May 2024. According to the Company's public filings, Defendant Higgins received $310,044 in 2023 in compensation from the Company. As of March 11, 2024, Defendant

Higgins beneficially owned 27,853 shares of Hasbro stock, worth roughly $1.5 million.

30.     Defendant Kenneth A. Bronfin ("Bronfin") served as a member of the Board from 2008 until May 2023.

31.     Defendant Edward M. Philip ("Philip") served as a member of the Board from 2002 until May 2023.

***Officer Defendants***

32.     Defendant Gina Goetter ("Goetter") has served as Hasbro's Chief Financial Officer ("CFO") since May 2023. Defendant Goetter is named as a defendant in the Securities Class Action. According to the Company's public filings, Defendant Goetter received $5,710,001 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Goetter beneficially owned 108,408 shares of Hasbro stock, worth roughly $5.7 million.

33.     Defendant Deborah Thomas ("Thomas") served as Hasbro's CFO from May 2009 until May 2023. Defendant Thomas is named as a defendant in the Securities Class Action. According to the Company's public filings, Defendant Thomas received $7,837,079 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Thomas beneficially owned 269,072 shares of Hasbro stock, worth roughly $14.1 million.

34.     Defendant Eric Nyman ("Nyman") served as Hasbro's Chief Operating Officer ("COO") from February 2022 until March 2023. Defendant Nyman is named as a defendant in the Securities Class Action. According to the Company's public filings, Defendant Nyman received $5,824,913 in 2023 in compensation from the Company. As of March 11, 2024, Defendant Nyman beneficially owned 50,940 shares of Hasbro stock, worth roughly $2.7 million.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

35.     By reason of their positions as officers, directors, and/or fiduciaries of Hasbro and

because of their ability to control the business and corporate affairs of Hasbro, the Individual Defendants owed Hasbro and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care.

36.     The Individual Defendants were and are required to use their utmost ability to control and manage Hasbro in a fair, just, honest, and equitable manner.

37.     The Individual Defendants were and are required to act in furtherance of the best interests of Hasbro and its shareholders to benefit all shareholders equitably.

38.     Each director and officer of the Company owes Hasbro and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company.

39.     As fiduciaries of Hasbro, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein because of their position and authority.

40.     The officers and directors of Hasbro were and are required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company to discharge their duties.

41.     Each Individual Defendant under their position as officers of Hasbro, owed the Company and its shareholders the highest fiduciary duties of loyalty, good faith, care, and diligence in the management and administration of the affairs of the Company.

42.     As Hasbro's directors and officers, the Individual Defendants knowingly acted with reckless disregard for their obligations as fiduciaries because their conduct posed a significant risk of harm to the Company.

43.     The Individual Defendants had a duty to prevent and correct the dissemination of erroneous, misleading, and deceitful information concerning, *inter alia*, the Company's financial

condition, business operations, management, performance, growth, earnings, and business prospects. Moreover, as senior officers of a publicly traded company whose common stock was registered with the SEC, pursuant to the Exchange Act, the Individual Defendants had a duty to act in the best interest of the Company.

44.    As fiduciaries, the Individual Defendants had a duty to disclose in its regulatory filings with the SEC all events described in this Complaint that it failed to disclose so that the Company's valuation and the common stock price would be based on accurate information and to preclude deceptive practices in the market.

45.    The Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company to discharge their duties. Among other things, the Individual Defendants were required to:

a)    Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Rhode Island, the United States, and pursuant to Hasbro's own Code of Conduct and internal guidelines;

b)    Conduct the affairs of the Company in an efficient, businesslike manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock.

c)    Remain informed as to how Hasbro conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make a reasonable inquiry and to take steps to correct such conditions or practices;

d)    Establish and maintain systematic, accurate records and reports of the business and internal affairs of Hasbro and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause an independent investigation to be

made of, said reports and records;

        e)      Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Hasbro's operations would comply with all laws and Hasbro's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate.

        f)      Exercise reasonable control and supervision over the Company's officers and employee's public statements and any other reports or information that the Company was required by law to disseminate.

        g)      Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

        h)      Examine and evaluate any reports of examinations, audits, or additional financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

46.     Each of the Individual Defendants also bore a duty of loyalty to Hasbro and its shareholders, mandating the prioritizations of the Company's and its shareholders' interests above their own in the management of the Company's affairs and prohibiting the use of their position, influence, or insight into the Company's operations for personal gain.

47.     During the pertinent times, the Individual Defendants served as agents for each other and for Hasbro, always operating within the parameters of their agency.

48.     The Individual Defendants, through their advisory, executive, managerial, and directorial roles within Hasbro, were privy to detrimental, confidential information concerning the Company.

49.    Due to their positions of influence and authority, the Individual Defendants had the capability to, and indeed did, directly or indirectly control the improper actions detailed in this complaint, as well as the content of the various public declarations made by Hasbro.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

50.    In committing the wrongful acts alleged herein, the Individual Defendants have engaged in, or aligned themselves with, a common course of conduct, acting in concert and conspiring with one another to further their misconduct. They caused the Company to conceal the true facts as outlined in this complaint. Additionally, the Individual Defendants aided, abetted, and/or assisted each other in breaching their respective duties.

51.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to enable and conceal the Individual Defendants' violations of the law, including breaches of fiduciary duty and unjust enrichment.

52.    The Individual Defendants carried out their conspiracy, common enterprise, and/or coordinated actions by causing the Company to deliberately, recklessly, or negligently conceal material facts, fail to correct those misrepresentations, and violate applicable laws.

53.    To advance this plan, conspiracy, and course of conduct, the Individual Defendants, both collectively and individually, carried out the actions described herein. As these actions were executed under the Board's authority, each of the Individual Defendants, being directors of Hasbro, was a direct, essential, and significant participant in the conspiracy, joint enterprise, and/or coordinated conduct alleged in this complaint.

54.    Each of the Individual Defendants aided, abetted, and provided substantial assistance in the wrongdoings described herein. In providing such assistance, each Individual Defendant acted with actual or constructive knowledge of the primary misconduct, either directly

participated in or significantly contributed to the commission of that wrongdoing, and was, or should have been, aware of their overall role in furthering the misconduct.

55.    At all relevant times, each of the Individual Defendants acted as an agent of the other Defendants and of Hasbro, and at all times operated within the course and scope of that agency.

## HASBRO'S CODE OF CONDUCT

56.    Hasbro's Code of Conduct begins with a message from Defendant Cocks which states the following, in pertinent part:

> At Hasbro, we believe in fair play and take great pride in maintaining that tradition of ethics and compliance. Every day we count on you to demonstrate our pledge by doing business with integrity – because our success is measured not only by our results, but also by how we achieve those results.

> Playing fairly and doing the right thing is at the heart of who we are as individuals and as a Company. Our Code of Conduct outlines our core values and remains the foundation that guides us in our decisions.

> \* \* \*

> Keeping with our continued commitment of doing business with integrity, our belief in fair play and our values of diversity and inclusion, I am confident that we will be worthy stewards of Hasbro's culture and future success.

57.    The Code of Conduct states that "[w]henever there is a conflict or a difference between a legal requirement and our Code, we will apply the strictest standard."

58.    The Code of Conduct applies to "all employees of Hasbro, regardless of position," including the Board of Directors, and violations of the Code of Conduct "may result in disciplinary action up to and including termination of employment."

59.    In a subsection titled "Conflicts of Interest," the Code of Conduct states that "A conflict of interest may occur when our personal interests or activities affect our ability to make objective decisions for Hasbro. . . . You are not allowed to engage in activities that create a conflict

13

of interest or the appearance of a conflict of interest."

60.    With respect to Hasbro's corporate assets, the Code of Conduct states that each employee is responsible for "[p]rotect[ing] Hasbro assets against loss, damage or misuse."

61.    In a subsection titled "Creating and Maintaining Business Records," the Code of Conduct states the following, in pertinent part:

> All of us contribute to the process of recording financial and non-financial information. Business partners, government and regulatory officials and the public rely on our accurate and thorough disclosures and business records. Such information is also essential within Hasbro so that we can make good decisions.
>
> • Be open, honest and accurate when creating business records.
>
> • Never make false or dishonest entries about our business and performance – good or bad.
>
> • Unrecorded funds or assets are never acceptable.
>
> • Ensure all transactions are properly authorized.
>
> • Follow applicable laws and policies when creating, retaining or destroying documents including those in electronic formats.

62.    With respect to public communications, the Code of Conduct states that "[i]f you are involved in preparing documents for public communications or filings with government agencies, always strive to be clear, objective, fair, accurate, complete, and timely."

63.    With respect to the Company's books and records, the Code of Conduct includes the commitment to "[k]eep accurate books and records so that payments can be honestly described and Company funds are not used for unlawful purposes."

## HASBRO'S AUDIT COMMITTEE CHARTER

64.    Pursuant to Hasbro's Audit Committee Charter, the purpose of the Audit Committee is to:

(a) appoint the independent auditor and oversee the independent auditor's work, (b)

prepare the report required to be included in the Company's annual proxy statement by the rules of the Securities and Exchange Commission and (c) assist the Board of Directors (the "Board") of the Company in its oversight of (i) the integrity of the Company's financial statements, (ii) the Company's compliance with legal and regulatory requirements, (iii) the independent auditor's qualifications and independence, and (iv) the performance of the Company's internal audit function and independent auditor.

65.    In a subsection titled "*Oversight of Audit Process and Company's Compliance and Risk Management*," the Audit Committee Charter tasks the Audit Committee with the following responsibilities:

- The Committee shall review and discuss with management and the independent auditor the interim financial statements and Management's Discussion and Analysis of Financial Condition and Results of Operations ("MD&A") of the Company prior to the filing of the Company's Quarterly Report on Form 10-Q.

- The Committee shall also discuss the results of the quarterly review and any other matters required to be communicated to the Committee by the independent auditor under generally accepted auditing standards, including the matters required to be discussed by Statement of Auditing Standards ("SAS") No. 100.

- The Committee shall review with management and the independent auditor the audited financial statements and MD&A to be included in the Company's Annual Report on Form 10-K prior to the filing of such report.

- The Committee shall discuss the results of the annual audit and any other matters required to be communicated to the Committee by the independent auditor under generally accepted auditing standards, including the matters required to be discussed by SAS No. 61, and shall be responsible for recommending to the full Board the inclusion of the Company's audited financial statements in the Form 10-K.

* * *

- In connection with its review of the financial statements and MD&A to be included in the Company's quarterly reports on Form 10-Q and Annual Reports on Form 10-K, the Committee shall discuss with management and the independent auditor their qualitative judgments about the appropriateness, and not just the acceptability, of accounting principles and financial disclosure practices used or proposed to be adopted by the

Company, the reasonableness of significant judgments, including a description of any transactions as to which the management obtained Statement on Auditing Standards No. 50 communications, and the clarity of disclosures in the financial statements, including the Company's disclosures of critical accounting policies and other disclosures under "MD&A".

- The Committee shall review with internal auditors and the independent auditor any difficulties with audits and management's response to such issues.

- The Committee shall review with the Vice President–Internal Audit and management, the Internal Audit plan, scope, staffing and result of work performed, as well as the coordination of efforts with the independent auditors.

- The Committee shall discuss with management, internal auditors and the independent auditor the Company's system of internal controls, the Company's critical accounting principles and any significant issues related to financial statement presentations, including any changes in the Company's critical accounting policies and the effects of alternative GAAP methods, off-balance sheet structures and regulatory and accounting initiatives.

- The Committee shall review and discuss with management, internal auditors and independent auditors the Company's significant financial and other exposures, including material pending legal proceedings and other material contingent liabilities, and guidelines and policies relating to enterprise risk assessment and risk management, including the Company's procedures for monitoring and controlling such risks.

- The Committee shall review and discuss with management, the internal auditors and the independent auditors, the Company's programs, governance, systems, controls and procedures relating to cybersecurity, data privacy and data protection. The Committee shall review and discuss the Company's risk exposures in these areas and the steps management takes to identify, assess, monitor and mitigate such exposures.

- The Committee shall consider and review with management, the independent auditors and the Company's internal auditors any significant internal control deficiencies or material weaknesses communicated by the independent auditors together with management responses thereto and the remediation thereof.

- The Committee shall review and discuss with management earnings press releases and financial information and earnings guidance provided to analysts and rating agencies.

- The Committee shall consider and approve, if appropriate, major changes to the Company's auditing and accounting policies, principles and practices as suggested by the independent auditors, the Company's internal auditors or management.

- The Committee shall meet, at least quarterly, with the Company's management, internal auditors and independent auditors, each in separate executive sessions.

- In connection with and prior to giving their required certifications, the Company's Chief Executive Officer and Chief Financial Officer must disclose to the independent auditors and the Committee all significant deficiencies and material weaknesses in the design or operation of internal controls, and any fraud that involves management or other employees who have a significant role in the Company's internal controls.

- The Committee shall maintain procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and the confidential, anonymous submissions by employees or contractors of concerns regarding questionable accounting or auditing matters.

- The Committee shall review the performance of and pre-approve the appointment, replacement, reassignment, or dismissal of the Company's Vice President-Internal Audit.

- The Committee shall review management's plan for assuring compliance with the Company's Code of Conduct and other Company programs designed to promote regulatory compliance and ethical business conduct.

- The Committee shall report Committee actions to the Board on a regular basis with such recommendations as the Committee may deem appropriate.

- The Committee shall seek to ensure open communication among internal auditors, independent auditors, management and the Board.

- The Committee shall prepare the report required by the rules of the Securities and Exchange Commission to be included in the Company's annual proxy statement.

- The Committee shall annually perform an evaluation of the performance of the Committee and report to the Board on the results on such evaluation.

## SUBSTANTIVE ALLEGATIONS

*Background*

66.    Hasbro is a multinational toy and entertainment company that manufactures and distributes, *inter alia*, action figures, board games, and video games. The Company owns several well-known brands and franchises, including G.I. Joe, Transformers, Monopoly, Scrabble, Risk, Dungeons & Dragons, and Magic: The Gathering. Hasbro also produces television shows and movies based on its popular toy brands.

67.    Hasbro primarily operates in one of three reportable business segments: (i) Consumer Products; (ii) Wizards of the Coast and Digital Gaming;[2] and (iii) Entertainment. The Consumer Products segment "engages in the sourcing, marketing and sales of toy and game products around the world" and accounted for roughly 62%, 60%, and 58% of the Company's total revenues in 2021, 2022, and 2023, respectively.

68.    At the start of the COVID-19 pandemic, demand for the Company's products was temporarily heightened as a result of lockdowns and stay-at-home orders. Fearing supply chain disruptions related to the pandemic, Hasbro purchased and accumulated excess inventories in order to ensure that the Company maintained sufficient product to keep up with the rising demand.

69.    Throughout the Relevant Period, Hasbro's inventory levels were of significant concern to investors and the public. While the Individual Defendants consistently represented that they expected demand trends to continue and that the Company was well-positioned due to its high inventory levels, the heightened demand for the Company's products was a temporary and unsustainable result of the COVID-19-related lockdowns. Accordingly, contrary to repeated statements by the Individual Defendants, Hasbro's inventories were not of "good quality" and far

---

[2] Wizards of the Coast is a subsidiary of Hasbro known for several popular gaming franchises including Dungeons & Dragons and Magic: The Gathering.

exceeded customer demand.

***Materially False and Misleading Statements***

70.    On February 7, 2022, during the Company's fourth quarter 2021 earnings call, Defendant Thomas represented that "[t]he inventory we had at yearend is of very high quality," and the Company's "aged inventory is well below historical levels." Defendant Thomas further stated that the Company's high inventory level "reflects a significant increase in the amount of inventory in transit as lead times from China have increased about three times on average." Defendant Thomas continued, explaining that the higher inventory levels were "really because of inventory in transit and the input and freight costs that are capitalized in that inventory. Now the good part is what's in transit is our new spring releases for MAGIC and for our Consumer Products business. ***So it's an excellent quality*** and it is being slightly impacted though by those higher input costs as we think about inventory."[3]

71.    On February 23, 2022, Hasbro filed its 2021 annual report on Form 10-K with the SEC (the "2021 10-K"), which was signed by Defendants Stoddart, Thomas, Leinbach, Bronfin, Burns, Cochran, Gersh, Philip, Richie, West, and Higgins. Therein, the Company stated that "[I]nventories increased 40% in 2021 compared to 2020 reflecting increased lead-times from supply chain disruptions, as well as higher freight-in costs." The 2021 10-K further stated that "we believe the manufacturing capacity of our third-party manufacturers, as well as the supply of components, accessories and completed products which we purchase from unaffiliated manufacturers, are adequate to meet the anticipated demand in 2022 for our products."

72.    On April 19, 2022, Hasbro issued a press release announcing financial results for its first quarter of 2022, which stated that, "***[w]hile inventory was of high quality***, general supply

---

[3] Unless indicated otherwise, all emphasis is added.

chain disruptions caused longer in transit times, and earlier purchasing to mitigate out-of-stock situations, lead to an increase in inventory." During the related earnings call, hosted by the Company on the same day (the "1Q22 Earnings Call"), Defendant Thomas stated that to "improve product in stocks this holiday season versus last, we're advancing deliveries of key items in our owned inventory so that we can ensure it's on hand."

73.    Also during the 1Q22 Earnings Call, Defendant Nyman claimed that "our Hasbro inventories are in good shape" and "[o]ur retail inventories are in good shape as well." Defendant Nyman continued, stating that "***[q]uality is good***," and that "knowing that we're in pretty good shape there, we feel at this point pretty good . . . about our inventories going into the back half." Defendant Nyman further represented that the Company was expecting big entertainment releases in 2023 and that the Company was "ready for that" due to its "inventory buildup."  Defendant Cocks added that "we feel pretty good about where we're going into for Q2, Q3, and Q4, which is why we're maintaining our guidance" and "we think that inventory is filled with great products."

74.    On April 25, 2022, Hasbro filed a proxy statement with the SEC (the "2022 Proxy"), soliciting shareholder approval for, *inter alia,* the re-election of Defendants Bronfin, Burns, Cochran, Cocks, Gersh, Hamren, Jorgensen, Leinbach, Philip, Richie, Stoddart, West, and Higgins to serve for another one-year term on the Company's Board and the compensation of certain of the Company's executive officers, including Defendants Stoddart, Thomas, and Cocks.

75.    The 2022 Proxy touted the Company's "exceptional full-year 2021" financial performance," and emphasized that Hasbro "successfully navigated supply chain challenges across the business." The 2022 Proxy further stated that Hasbro "had a strong financial year and successfully navigated challenges due to the COVID-19 pandemic and supply chain disruptions."

76.    With respect to the Company's financial reporting procedures and legal and

regulatory compliance, the 2022 Proxy stated that the Audit Committee was responsible for assisting the Board in its oversight over:

> ❧ the integrity of the Company's financial statements, including management's conduct of the Company's financial reporting process, the financial reports provided by the Company, the Company's systems of internal accounting and financial controls, and the quarterly review and annual independent audit of the Company's financial statements; [and]

> ❧ the Company's compliance with legal and regulatory requirements.

77.    With respect to the Company's risk management function, the 2022 Proxy stated the following:

> The Board of Directors is actively involved in risk oversight for the Company. Although the Board as a whole has retained oversight over the Company's risk assessment and risk management efforts, the efforts of the various committees of the Board are instrumental in this process. Each committee, generally through its Chair, regularly reports back to the full Board on the conduct of the committee's functions. The Board, as well as the individual Board committees, also regularly speaks directly with key officers and employees of the Company involved in risk assessment and risk management.

78.    On July 19, 2022, Hasbro issued a press release announcing financial results for its second quarter of 2022, which claimed that "*[i]nventory is of high quality* and supply is well positioned to meet demand" and quoted Defendant Thomas as stating that "[i]n the first half of the year, we took significant steps to secure inventory to help ensure product availability for upcoming product launches, major entertainment releases and the holiday season."

79.    During the related earnings call, hosted by the Company on the same day (the "2Q22 Earnings Call"), Defendant Cocks stated the following:

> While our inventory levels are up year-over-year at the end of Q2, *the inventory is of high quality, positioning us to meet consumer demand and promote our new product innovation aggressively.* For instance, our early read on our first of two Prime Days at Amazon last week is positive with consumer deal takeaway up 20% year-over-year. Our newest game announcement, Wordle: The Party Game, is off to a record start for gaming pre-orders. As such, we expect inventory by year-end to be approximately flat year-over-year and to see reductions in on-hand supply by

the end of Q3.

80.     Defendant Cocks continued, adding that "we feel like that inventory is of very high quality and has a lot of upside potential for us in terms of POS."

81.     Also during the 2Q22 Earnings Call, Defendant Thomas stated the following regarding the Company's inventory levels and supply chain management:

> ***We proactively managed our supply chain and inventory purchases to mitigate disruption. We're much better-positioned to meet demand this year versus last.*** This action resulted in higher than typical inventory levels at Hasbro for this time of the year. To avoid the out-of-stock positions of the last year holiday season due to supply chain disruptions, retailers also shifted some consumer product direct shipments into the second quarter from the third quarter. Both our inventory and that of retail is of extremely high quality.

82.     Defendant Thomas added that "based on our plan to drive point-of-sale growth in the second half of the year, we believe we will end the year with inventory levels similar to year-end 2021."

83.     On October 18, 2022, during the Company's third quarter 2022 earnings call (the 3Q22 Earnings Call"), Defendant Thomas assuaged investor concerns related to Hasbro's inventory levels, stating that "***our inventory continues to be of high quality,*** but our goal is to work down the balance by year-end." Defendant Thomas further explained that  "retail inventory is up, as we said, at the end of the quarter, but ***it's of good quality*** and we have a lot of promotional activity planned for the fourth quarter. . . we're working with our retailers on promotional activity and much of it was setting for a lot of this new innovation that we're having in the fourth quarter."

84.     Also during the 3Q22 Earnings Call, Defendant Nyman stated that "we pride ourselves on making sure that we continue to stay ahead of our inventory situation." Defendant Nyman continued, stating that "I expect Q4 to be in line with where we've been and ***we'll work through our inventory again to finish the year in that low- to mid-single digit area that we talked***

***about, and that's what is built into our story*** that we've already discussed this morning."

85.     The statements identified above were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) the Company's inventories were not of "good quality," contrary to repeated representations by the Individual Defendants throughout the Relevant Period; (ii) Hasbro's inventories far exceeded customer demand; (iii) as a result, Hasbro struggled significantly to manage its excess inventories; (iv) demand for the Company's products was temporarily inflated at the start of the COVID-19 pandemic and, once people started returning to school and work, customer demand stagnated; (v) the Company's high inventory levels throughout the Relevant Period were not an accurate reflection of underlying demand; and (vi) as a result of the foregoing, positive statements concerning the Company's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times.

***The Truth Emerges***

86.     On January 26, 2023, the Company issued a press release, providing preliminary financial results for the fourth quarter of 2022 (the "4Q22 Release"). The 4Q22 Release reported 17% year-over-year decline in revenues for the fourth quarter of 2022 and quoted Defendant Cocks as stating that "our Consumer Products business underperformed in the fourth quarter against the backdrop of a challenging holiday consumer environment." The 4Q22 Release further disclosed that Hasbro was planning "leadership and organizational changes, including the elimination of approximately 15% of its global workforce this year" and announced the departure of Defendant Nyman from the Company.

87.     On this news, the price of Hasbro stock declined by 8.1% in one day, from a close of $63.78 per share on January 26, 2023 to a close of $58.61 per share on January 27, 2023. The

price of Hasbro stock remained artificially inflated, however, as the Individual Defendants continued to obscure the truth.

88.    For instance, during the Company's fourth quarter 2022 earnings call (the "4Q22 Earnings Call"), Defendant Cocks stated that "[w]e made progress on both our owned and retailed inventory in the fourth quarter, but have more work to do," before claiming that "we see **retail inventory not unhealthy** but still having a little bit of an overhang given the slowing consumer demand that we saw in Q4." Also during the 4Q22 Earnings Call, Defendant Thomas characterized the Company's inventory management issues as normal, stating that "[w]e do have some additional inventory we'll be looking at closing out over the course of this year that's built into our assumptions. **We have that every year**." During the call, Defendant Thomas continued to assuage investor concerns regarding the Company's inventory levels, stating the following:

> **And our inventory build, if we look at it, a big piece of it was preparing for the early releases of MAGIC: THE GATHERING and making sure we have paper on stock to print because that was in shortage – short supply last year.** So as we look at that, the closeouts that are in our owned inventory, we see selling those out at the right time for both us and for retailers to maximize the profit on that.

89.    On April 27, 2023, Hasbro issued a press release, announcing its financial results for the first quarter of 2023, which quoted Defendant Thomas as stating that "[t]he year has started on plan as we reduce retail inventory levels and remain positioned to drive continued margin expansion." During the related earnings call, hosted by the Company on the same day, Defendant Cocks explained that the Company had purportedly made "good progress on reducing retailer inventories and are on track for healthy improvements in our owned inventory in Q2 and Q3." Defendant Cocks continued, explaining that for "**owned inventories, we made progress outside of Action Figures and Wizards in Q1, and we expect that to continue**."

90.    On May 22, 2023, at the J.P. Morgan Global Technology, Media and

Communications Conference, Defendant Cocks stated the following with respect to the Company's inventory levels:

> **We saw good progress in Q1, cleaning up our retailer inventories.** And our inventories of retail were down 15% by the end of Q1. We think we'll be a fully clean level, mostly by the end of Q2. There might be a couple brands here or there, a couple of SKUs that we need to go into Q3 on. **But if anything, our situation at retail right now is we have too little inventory rather than too much.**

91.     On August 3, 2023, Hasbro issued a press release, reporting financial results for the second quarter of 2023, which quoted Defendant Cocks as touting "a solid second quarter, with revenue ahead of our expectations, **significant reduction of inventory**, and meaningful progress toward our transformation and cost savings programs." During the related earnings call, hosted by the Company on the same day, Defendant Cocks highlighted Hasbro's "**much improved inventory levels**," stating that "**[o]ur inventories are greatly improved**" and that "it's nice to have clean inventories and inventories reduced." Defendant Cocks additionally stated that "we feel like **our retailer inventory is at a pretty productive level**." Defendant Goetter reiterated these sentiments, claiming during the call that Hasbro "made significant progress in lowering inventory levels."

92.     On September 6, 2023, at the Goldman Sachs Communacopia and Technology Conference, Defendant Goetter stated the following with respect to Hasbro's inventory levels:

> **We're down 16% per our own inventory, down about the same with the retail inventory, but within that, when you look at our Toy business, it was down about 24%.** And we said for the year, our goal is to bring our inventory levels down to 20%. **In terms of does that get us back to normal or healthy, it gets us pretty darn close.**

93.     On October 26, 2023, the Company released third quarter 2023 financial results, disclosing an 18% year-over-year decline in Consumer Product revenues "**driven by** exited businesses, soft industry trends **and prioritization of inventory management across both owned and retail inventory**." The Company additionally revised its full year revenue guidance downward,

from a decline in the range of 3% to 6%, to a decline in the range of 13% to 15%, which Hasbro attributed to a decline in Consumer Product revenues.

94.     During the related earnings call, hosted by the Company on the same day, Defendant Goetter disclosed that Hasbro was expecting to incur a "$50-ish million [] onetime cost" related to "mov[ing] through inventory at the retailer level, extra marketing to move through the inventory, [and] extra obsolescence cost" in its Consumer Products segment.

95.     On this news, the price of Hasbro stock declined 11.7% per share, from a close of $54.75 per share on October 25, 2023, to a close of $48.37 per share on October 26, 2023.

***Stock Repurchases During the Relevant Period***

96.      According to the Company's public filings, while the price of Company stock was artificially inflated due to the false and misleading statements detailed herein, the Individual Defendants caused the Company to repurchase roughly 1.4 million shares of its own stock, for a total of roughly $125 million.

97.     Specifically, the Company repurchased 1,428,852 shares for $124,975,184 between April 1, 2022 and July 31, 2022.

98.     Given that the price of Hasbro stock was $48.37 after the corrective disclosures on May 1, 2024, the true value of the 1,428,852 repurchased shares was roughly $69.1 million. Accordingly, the Individual Defendants caused the Company to overpay by nearly $56 million to repurchase these shares.

## DAMAGE TO HASBRO

99.     As a direct and proximate result of the Individual Defendants' misconduct, Hasbro has incurred, and will continue to incur, losses and expenses amounting to millions of dollars.

100.    Such expenditures include, but are not limited to, legal fees associated with defending against the Securities Class Action and any internal investigations, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

101.    These expenditures also include, but are not limited to, the costs associated with implementing measures to remediate the material weaknesses in the Company's internal control over financial reporting.

102.    These losses also include, but are not limited to, substantial compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, such as bonuses linked to the Company's achievement of specific objectives, as well as other benefits provided to those Individual Defendants.

103.    As a direct and proximate result of the Individual Defendants' actions, Hasbro has suffered and will continue to suffer damage to its reputation and goodwill, along with a "liar's discount" that will negatively impact the Company's stock in the future. This is due to the Company's misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

104.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

105.    Hasbro is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

106.    Plaintiff is a current shareholder of Hasbro and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will

adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

107.    At the time this action was commenced, the eleven-member Board was comprised of Defendants Stoddart, Cochran, Cocks, Gersh, Hamren, Jorgensen, Richie, and West (the "Director Defendants"), along with Frank Gibeau, Darin Harris, and Owen Mahoney, who joined the Board in March 2024 and are not parties to this action. Accordingly, Plaintiff is only required to show that six Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, at least eight of the Board's current directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

108.    The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

109.    Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

110.    Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

111.    Defendant Cocks is not disinterested or independent and is therefore incapable of considering a demand. Defendant Cocks serves as the Company's CEO. Accordingly, the Company admits that Defendant Cocks is not independent pursuant to NASDAQ listing standards.

112.    Furthermore, Defendants Cocks and Stoddart are not disinterested or independent because they are named as defendants, and face significant personal liability, in the Securities Class Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

113.    Defendants Cochran, Gersh, and Jorgensen served on the Company's Audit Committee during the Relevant Period (the "Audit Defendants") and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial accounting and reporting, the underlying internal controls and procedures over financial reporting, and the audits of the financial statements. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business and the adequacy of its internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

114.    The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Directors to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make

the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

115.    All of the Board's current members derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the Board's current members from calling into question the Director Defendants' conduct. Specifically, none of the Board's current members have taken remedial action to redress the conduct alleged herein. For instance, none of the Board's current members have sought to enforce the Company's Clawback Policy, which provides:

> [I]f an accounting restatement is required due to the Company's material non-compliance with any accounting requirements, then the Company will recover from all of the Company's executive officers, regardless of whether they were at fault or not in the circumstances leading to the restatement, any excess in the incentive compensation they earned over the prior three years over what they would have earned if there had not been a material non-compliance in the financial statements.

116.    The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

117.    The acts complained of herein constitute violations of fiduciary duties owed by Hasbro's officers and directors, and these acts are incapable of ratification.

118.    The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds i.e., monies belonging to the stockholders of Hasbro. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Hasbro, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

119.    If there is no directors' and officers' liability insurance, then the directors will not cause Hasbro to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

120.    Thus, for all of the reasons set forth above, at least eight of Hasbro's current directors are unable to consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**Against the Individual Defendants for Violations of § 14(a) of the Exchange Act
and Rule 14a-9**

121.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

122.    The Individual Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

123.    The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in 2022 Proxy. As alleged above, the 2022 Proxy contained materially false and misleading statements concerning the Company's inventory management and the adequacy of the Company's internal controls and risk management function.

124.    The 2022 Proxy was used to solicit shareholder votes in connection with the re-election of Defendants Bronfin, Burns, Cochran, Cocks, Gersh, Hamren, Jorgensen, Leinbach, Philip, Richie, Stoddart, West, and Higgins to the Board.

125.    The 2022 Proxy was also used to solicit the compensation of certain of the Company's executive officers including Defendants Stoddart, Thomas, and Cocks. While the shareholder vote on compensation was non-binding, the 2024 Proxy indicated that the "the Board of Directors and Compensation Committee of the Company will carefully consider the results of this vote in connection with their ongoing evaluation, and establishment, of the Company's compensation arrangements and programs for the Company's Named Executive Officers."

126.    Describing the Company's "Executive Compensation Philosophy and Objectives," the 2022 Proxy indicated that compensation is performance-based, stating that one of the Compensation Committee's "fundamental objectives" with respect to executive compensation is to "[i]nstill a pay-for-performance culture" by ensuring that "a substantial majority of the

compensation opportunity for the [executive officers] is composed of variable, performance-based compensation elements."

127.   The materially false and misleading statements contained in the 2022 Proxy regarding the Company's inventory management and the adequacy of the Company's internal controls and risk management function therefore misleadingly induced shareholders to vote in favor of the election of Defendants Bronfin, Burns, Cochran, Cocks, Gersh, Hamren, Jorgensen, Leinbach, Philip, Richie, Stoddart, West, and Higgins and performance-based compensation to Defendants Stoddart, Thomas, and Cocks, to which they were not entitled.

128.   The payment of unwarranted performance-based compensation to these Company executives was a waste of corporate assets.

### COUNT II
**Against the Individual Defendants for Violations of § 10(b)**
**of the Exchange Act, 15 U.S.C. § 78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5**

129.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

130.   The Individual Defendants participated in a scheme with the purpose and effect of defrauding Hasbro. Not only is Hasbro now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also one of the largest victims of the unlawful scheme perpetrated upon Hasbro by the Individual Defendants.

131.   During the Relevant Period, the Individual Defendants caused the Company to overpay by nearly $56 million to repurchase roughly 1.4 million shares.

132.   The Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or the mails, engaged and

participated in a continuous course of conduct designed to falsify the Company's press releases, public statements, and periodic and current reports filed with the SEC.

133.    The Individual Defendants employed devices, schemes, and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Hasbro not misleading.

134.    The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Hasbro.

135.    The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

136.    By virtue of the foregoing, the Individual Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**COUNT III**
**Against the Individual Defendants**
**For Breach of Fiduciary Duties**

137.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

138.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Hasbro's business and affairs.

139.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision. The Individual Defendants' conduct set forth herein was due to their intentional, reckless, or negligent breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally, recklessly, or negligently breached or disregarded their fiduciary duties to protect the rights and interests of Hasbro's shareholders.

140.    In breach of their fiduciary duties owed to Hasbro, the Individual Defendants willfully or recklessly caused the Company to violate federal regulations by falsely stating and/or failing to disclose the Company's true business performance, as alleged herein.

141.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct those public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth, in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Hasbro's securities.

142.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

143.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Hasbro has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

144.    Plaintiff, on behalf of Hasbro, has no adequate remedy at law.

### COUNT IV
**Against the Individual Defendants**
**For Aiding and Abetting Breach of Fiduciary Duty**

145.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

146.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

147.    Plaintiff, on behalf of Hasbro, has no adequate remedy at law.

### COUNT V
**Against the Individual Defendants**
**For Unjust Enrichment**

148.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

149.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material information, the fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of Hasbro.

150.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Hasbro that were tied to the performance or artificially inflated valuation of Hasbro, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

151.    Plaintiff, as a shareholder and representative of Hasbro, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

152.    Plaintiff, on behalf of Hasbro, has no adequate remedy at law.

## COUNT VI

**Waste of Corporate Assets
Against the Individual Defendants**

153.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

154.    As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Hasbro to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, and to lose assets from investors and customers who no longer trust the Company.

155.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

156.    Plaintiff, on behalf of Hasbro, has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

a)    Declaring that the Plaintiff may maintain this action on behalf of Hasbro and that Plaintiff is an adequate representative of the Company;

b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Hasbro;

c)    Determining and awarding to Hasbro the damages sustained, or disgorgement or restitution, by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

d)    Directing the Individual Defendants to take all necessary actions to reform and improve Hasbro's corporate governance and internal procedures to comply with applicable laws and to protect Hasbro and its shareholders from a repeat of the damaging events described herein;

e)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

f)    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 5, 2025                    **RIGRODSKY LAW, P.A.**

                                           By: */s/ Timothy J. MacFall*
                                           Timothy J. MacFall
                                           Samir Aougab
                                           825 East Gate Boulevard, Suite 300
                                           Garden City, NY 11530
                                           Telephone: (516) 683-3516
                                           Facsimile: (302) 654-7530
                                           tjm@rl-legal.com
                                           sa@rl-legal.com

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 267-507-6085
Email: jgrabar@grabarlaw.com

*Counsel for Plaintiff*